HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.K., | CASE NO. 2:26-cv-00160-RAJ |
| Petitioner, | ORDER |
| v. | |
| LAURA HERMOSILLO, *et al.*, | |
| Respondents. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner A.K.'s Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has reviewed the Petition, the submissions in support of and in opposition to the Petition, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** the Petition.

## II.    BACKGROUND

Petitioner is a citizen of Russia who entered the United States on December 26, 2022.  Dkt. # 1 ¶ 1.  U.S. Border Patrol arrested and detained Petitioner and released him the following day on parole subject to 8 U.S.C. § 1182(d)(5).  Dkt. # 1 ¶ 32; Dkt. # 6 at 1.  Petitioner was placed on an order of recognizance ("OREC") on January 17, 2023.  Dkt. # 6 at 2.  On December 26, 2023, Petitioner filed his application for asylum, withholding of

ORDER – 1

removal, and Convention Against Torture Protection with the Portland Immigration Court. Dkt. # 1 ¶ 34. On July 18, 2024, U.S Immigration and Customs Enforcement ("ICE") enrolled Petitioner in its Alternatives to Detention (ATD) Program. Dkt. # 6 at 3. As part of the ATD program, Petitioner was required to meet certain "check-in" requirements. *Id.* at 1. Petitioner states that, while waiting for his hearing before the Portland Immigration Court, to the best of his knowledge, he complied with all DHS requirements, including "phone and video check-ins through the ISAP mobile phone application (ISAP app) as well as in-person check ins at the ICE DHS office in Portland, Oregon." Dkt. # 1 ¶ 34. The Federal Respondents allege that Petitioner "missed biometric check-ins six times." *Id.* at 3; *but see* Dkt. # 7 ¶ 9 (listing dates for five alleged violations). Petitioner, however, responds that at least one of these violations resulted from a "technical app failure on Thanksgiving Day that was reported to ICE immediately and resolved in-person the very next business day." Dkt. # 9 at 6.

On December 27, 2025, ICE officers knocked on the door of Petitioner's domicile; when Petitioner opened the door, the officers entered the dwelling and arrested Petitioner. Dkt. # 1 ¶ 36. Petitioner alleges that his spouse informed the arresting ICE officers that Petitioner's 16-year-old son is currently ill with Medulloblastoma (brain cancer), and provided medical documentation when requested by ICE. *Id.* ¶ 37. The arresting ICE officers stated that Petitioner would be released within two hours after being fitted with a monitoring device. *Id.* ¶¶ 36–37. Respondents then transported Petitioner to the Northwest ICE Processing Center in Tacoma, Washington, where he remains detained. *Id.* ¶ 38. Respondents did not provide Petitioner with any written notice explaining the basis for the revocation of Petitioner's release prior to his re-detention. *Id.* ¶ 5. Nor did Respondents provide Petitioner with a pre-detention hearing before a neutral decisionmaker to justify the basis for Petitioner's detention. *Id.*

ORDER – 2

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  The district courts' habeas jurisdiction includes challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The petitioner bears the burden of proof by a preponderance of the evidence.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.  DISCUSSION

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The protections afforded by the Constitution's due process requirements apply to "all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.  As several courts in this District have recognized, these principles apply to noncitizens re-detained by ICE and DHS after the petitioners have been

ORDER – 3

released on ORECs. *See, e.g.*, *Bello Chacon v. Hermosillo*, No. 2:25-CV-02299-TMC, 2025 WL 3562666, at *3 (W.D. Wash. Dec. 12, 2025); *Sarwari v. Wamsley*, No. 2:26-CV-00121-TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

As a threshold matter, the Court rejects Respondents' argument that Petitioner's re-detention is lawful because the applicable statute and regulation do not require a pre-detention hearing, as it did recently in a similar case. *See Osorio Molina v. Hermosillo et al.*, No. 2:26-CV-00095-RAJ, 2026 WL 381161, at *2 (W.D. Wash. Feb. 11, 2026). Even if Respondents are correct that Petitioner is mandatorily detained subject to 8 U.S.C. § 1225(b)—which the Court need not decide here—the fact that "a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances . . . does not mean such a hearing is not required by Due Process." *Id.* (collecting cases). The Court accordingly turns to the application of the *Mathew* factors.

The first *Mathews* factor favors Petitioner, given his strong interest in freedom from detention by immigration authorities. An individual's "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). Respondents acknowledge the "weighty liberty interests implicated by the Government's detention of non-citizens," (Dkt. # 6 at 6 (quoting *Reyes v. King*, No. C19-8674, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)), but argue that the weight of that liberty "must be considered in the broader picture of the immigration system, which has long acknowledged that a noncitizen has a lesser liberty interest than a citizen." Dkt. # 6 at 6. Respondents also note that detention during deportation proceedings is "a constitutionally valid aspect of the deportation process." *Id.* at 6 (citing *Demore v. Kim*, 538 U.S. 522, 523 (2003)). Neither of these arguments, however, diminishes Petitioner's liberty interest. Petitioner here "does not

ORDER – 4

contend that his liberty interests is equivalent to a citizen's, nor does he challenge the constitutionality of immigration detention *per se*: instead, he asserts, correctly, that the Constitution protects his liberty interests by requiring due process prior to a deprivation of his liberty." *Sarwari*, 2026 WL 279968, at *3. And courts throughout this Circuit have recently concluded that "non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed." *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *3 n.3 (W.D. Wash. Sept. 17, 2025), (collecting cases). When Petitioner was released, "first on humanitarian parole, then on his own recognizance, Petitioner acquired a liberty interest entitled to the protections of the Due Process Clause." *Sarwari*, 2026 WL 279968, at *3 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025)). Petitioner's actions since that initial release include "applying for asylum, supporting his family . . . and attending mandatory check-ins," demonstrating his "reasonable reliance on these interests and the weightiness of those interest." *Id.* Accordingly, the first *Mathews* favor weighs in Petitioner's favor.

The second *Mathews* factor also favors Petitioner. The procedures used to re-detain Petitioner created a high risk of an erroneous deprivation of his liberty interests, and there is a significant probability that the value of additional safeguards would be high. Respondents appear to contest this factor by arguing that 8 C.F.R. § 1236.1(c)(9) does not require a determination that Petitioner is a flight risk and poses no danger to the community, and therefore that a pre-deprivation hearing would have been "futile." Dkt. # 6 at 5–6. However, even if the express terms of Petitioner's parole notice had allowed for discretionary termination or expiration, that still would not "obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Petitioner's re-detention in this case appears to be arbitrary. Here, like in *E.A. T.-B.* and its successor cases, the only "evidence" Respondents present in support of the alleged violations

ORDER – 5

purportedly serving as the basis for Petitioner's re-detention is the declaration of a deportation officer, based on his review of "case records in official DHS systems" and "familiarity" with Petitioner, that Petitioner missed five biometric check-ins.  Dkt. # 7 ¶¶ 2, 9; *see Sarwari*, 2026 WL 279968, at *5.  However, Respondents offer no "corresponding facts connected to the individual violations."  *Sarwari*, 2026 WL 279968, at *5. Petitioner's explanation that the final alleged biometric violation was the result of a technical violation on Thanksgiving Day that Petitioner promptly rectified underscores the additional value that would have been provided by a pre-detention hearing.  Dkt. # 9-1 ¶¶ 5–6; *see also Sarwari*, 2026 WL 279968, at *5 (acknowledging potential for conflation between technical issues and true check-in violations) (internal citations omitted).  Instead, Respondents offer only "vague, conclusory allegations to which Petitioner cannot respond and that the Court cannot evaluate."  *Sarwari*, 2026 WL 279968, at *5.

Finally, as to the third *Mathews* factor, the government's interest in re-detaining A.K. without additional procedures is low.  Respondents do not argue that A.K. poses a flight risk or danger to his community, or that he otherwise required immediate re-detention without additional procedural safeguards.  Nor do they assert that additional procedural protections would have unreasonably burdened the government.  Instead, they merely restate the principle that "[t]he Government has a heightened interest in the immigration detention context."  Dkt. # 6 at 6 (citing *Rodriguez Diaz*, 53 F.4th 1189, 1206 (9th Cir. 2022)).  Those interests, however, are "not threatened if a pre-deprivation hearing is required."  *E.A. T.-B.*, 795 F. Supp. 3d at 1324.  Accordingly, all three *Mathews* factors favor Petitioner and support a finding that his detention violates procedural due process.

## V.   CONCLUSION

Based on the foregoing, the Court **GRANTS** A.K.'s Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court **ORDERS** that Respondents:

(1)     Shall immediately release Petitioner from custody;

ORDER – 6

(2) Shall file with the Court a notice within 2 business days confirming Petitioner's release; and

(3) Shall not re-detain Petitioner unless and until providing him with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Petitioner may file a fee petition within the deadlines set by the Equal Access to Justice Act. The parties must comply with the Court's meet and confer requirements prior to filing, and the Court takes no position at this time regarding whether such fee petition will be granted.

Dated this 13th day of February, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 7